```
              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ALABAMA
                   SOUTHERN DIVISION

ADRIENNE CURRY,              )
                             )
     Plaintiff,              )
                             )
vs.                          )    Civil Action No. CV-96-S-1380-S
                             )
JESSE BROWN, Secretary,      )
Department of Veterans       )
Affairs,                     )
                             )
     Defendant.              )
```

FILED
98 JUN 26 PM 2: 48
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUN 2 6 1998

## MEMORANDUM OPINION

This action is before the court on defendant's motion for summary judgment. Upon consideration of the pleadings, briefs, and evidentiary submissions, this court concludes the motion is due to be denied.

### I.  SUMMARY OF FACTS

The Veterans Administration Hospital located in Birmingham, Alabama, operates under the auspices of the United States Department of Veterans Affairs. (Complaint ¶ 3.) The hospital hired Adrienne Curry as a ward clerk in 1985. (Id.) Curry was promoted to the position of clerk/typist in 1990. (Id. ¶ 7.)

While holding that position, Curry alleges she was "continually discriminated against" and "harassed with respect to job assignments, transfers, terms, conditions and privileges of employment" by her supervisor, Willie Fields, coordinator of Outpatient Substance Abuse Clinic ("OSAC"). (Id. ¶ 8.) Curry's allegations primarily center on Fields' conduct.

Curry alleges that Fields "asked [her] to work outside of her

classification as a Program Assistant" so that he would have more frequent contact with her. (*Id.*) Curry also alleges that Fields harassed her by calling her "dorm at Tech School at Shepphard Air Base, Wichita Falls, Texas" between August 1993 and December 1993. (*Id.* ¶¶ 8-9.)

Additionally, Curry contends Fields invited her to meet him at a conference in Pittsburgh, Pennsylvania in March of 1994. When Curry declined, she was "involuntarily transferred permanently to the position of Program Assistant." (*Id.* ¶ 9.)

Curry avers that after she initiated a formal complaint against Fields in April of 1994, he "told plaintiff that she would flunk her next appraisal," and, she "was subsequently written up for trivial matters, for which other employees were not written up." (*Id.* ¶ 10.) Fields also allegedly refused to accommodate Curry's request for "job flexibility" so she could attend school. (*Id.*) Subsequently, Fields allegedly retaliated against Curry "by allowing a non-supervisory staff member, Ken Beard, to supervise and counsel, although he was not in a superior position to plaintiff." (*Id.* ¶ 11.)

In addition, Curry contends Fields made several calls to her home, and at least one to her sister's home, trying to reach her during non-working hours. On one occasion, Fields allegedly "invited her to meet him at a local restaurant under the pretext of job related urgency." (*Id.* ¶ 12.) Finally, Curry alleges that defendant

2

> tolerated a hostile work environment by failing to take action when she complained of patients who would touch, talk about her sexually and kiss her. When Plaintiff complained, Plaintiff's supervisor, Fields, told plaintiff that she should be glad that men "hit on you." Fields further promoted a sexual[ly] hostile work environment by often calling plaintiff in and discussing with plaintiff sexual matters, including those involving him and his wife. Fields further aggravated the hostile work environment by asking plaintiff about her relationship with her boyfriend.

(*Id.* ¶ 13.)

Curry commenced this action on May 28, 1996, alleging defendant subjected her to a sexually hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.*[1] She seeks a permanent injunction, reinstatement, and "an order requiring the defendant to make the plaintiff whole by awarding her back pay, and other compensatory damages, and punitive damages, lost benefits, costs, attorney[']s fees, and expenses." (*Id.* at 5.)

Defendant filed a motion to dismiss, or in the alternative, for summary judgment, on July 2, 1997. (Doc. No. 11.) By order entered July 10, 1997, this court informed the parties the motion would be treated as one for summary judgment, and, would be deemed submitted on August 12, 1997. (Doc. No. 13.) Plaintiff notified the court by letter dated December 12, 1997 that she had dismissed her attorney, and requested additional time to retain new counsel and respond to the pending motion for summary judgment. (Doc. No.

---

[1] The Equal Employment Opportunity Act of 1972 (42 U.S.C. § 2000e-16(c)) brought federal employees within the scope of Title VII.

3

22.) The court granted plaintiff's request by order entered December 17, 1997, extending the deadline for filing a response to the pending motion until January 16, 1998. (Doc. No. 23.) The pending motion is now briefed and ready for decision.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Id.* In determining whether this burden is met, the court must view the evidence "and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)).

Once the movant's initial burden is met, "the burden shifts to

4

the nonmovant to 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). In meeting its burden, "the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992)(citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

"'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tipton*, 965 F.2d at 999 (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513). Even so, a "mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing *Anderson*, 477 U.S. at 242, 106 S.Ct. 2505). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

### III. DISCUSSION

In *Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976), the Supreme Court held that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *See also Canino*

v. *United States EEOC*, 707 F.2d 468 (11th Cir. 1983)(holding that former federal employees must bring all employment discrimination claims under Title VII). The *Brown* Court recognized that Title VII provides "a careful blend of administrative and judicial enforcement powers" grounded upon "rigorous administrative exhaustion requirements and time limitations." *Brown*, 820 U.S. at 832-33, 96 S.Ct. at 1967-68. Those "preconditions," when met, trigger a federal employee's right to seek vindication against her employer's discriminatory conduct in federal district court. *Id.* Defendant contends plaintiff's claims should be dismissed for failure to comply with one of those preconditions, as set out in 29 C.F.R. § 1614.105(d):

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>
> . . .
>
> (d) [T]he Counselor shall conduct the final interview with the aggrieved person within 30 days of the date the aggrieved person brought the matter to the Counselor's attention. If the matter has not been resolved, the aggrieved person shall be informed in writing by the Counselor, not later than the thirtieth day after contacting the Counselor, of the right to file a discrimination complaint. <u>The notice shall inform the complainant of the right to file a discrimination complaint within 15 days of receipt of the notice</u>, of the appropriate official with whom to file a complaint and of the complainant's duty to assure that the agency is informed immediately if the complainant retains counsel or a representative.

29 C.F.R. § 1614.105.

The only issue presented to the court by defendant's motion,

6

then, is whether Curry's Equal Employment Opportunity ("EEO") complaint was filed within 15 days of the date on which she received her notice to file. Defendant contends plaintiff filed her EEO complaint too late, and is not entitled to the benefit of equitable tolling principles to save this action. Plaintiff presents two arguments in opposition to defendant's motion.

First, plaintiff argues that she misunderstood the proper method of counting the 15 days, believing that the deadline was 15 "working" days, not 15 "calendar" days after receipt of the notice. As evidence of her misunderstanding, Curry submits a copy of an excerpt from the personal calendar she was using in February of 1995. (Attachment to Plaintiff's Opposition Brief (Doc. No. 27).) Those pages reflect the following notation on February 7, 1995: "Last day to turn in EEOC." (*Id.*) That date supports Curry's claim that she mistakenly counted only working days to establish her deadline.

Nevertheless, the United State Supreme Court instructs that equitable tolling of statutory deadlines should be invoked "only sparingly." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990). Moreover, the *Irwin* Court held that "principles of equitable tolling ... do not extend to what is at best a garden variety claim of excusable neglect." *Irwin*, 498 U.S. at 96, 111 S.Ct. at 458. Plaintiff's misunderstanding of the proper method of counting days is, at best, only excusable neglect. Thus, she may not invoke the rare remedy

7

of equitable tolling to preserve her claim on that basis.

Plaintiff's second argument is more compelling. Defendant contends, and plaintiff does not dispute, that she acknowledged receipt of her notice to file on January 17, 1995.[2] (Second Curry Affidavit at 1-2 (attachment to Doc. No. 27).)[3] Nevertheless, plaintiff states in affidavit that she actually received the notice on January 20, 1995, not January 17, 1995. (Second Curry Affidavit at 1.)[4] Specifically, she avers that Charles Perkins, her EEO counselor, "had me sign ... and date [the notice] January 17, 1995, even though he brought it by on the 20th." (Id.)

Resolution of those competing contentions is dispositive on the issue of whether Curry's complaint was timely filed. If Curry received the notice on January 17, 1995, her EEO complaint filed on February 3, 1995, was untimely, and defendant's motion is due to be granted. On the other hand, if Curry received the notice on January 20, 1995, her complaint filed on February 3, 1995, was timely, and defendant's motion is due to be denied. A factfinder could choose to credit Curry's testimony as to her date of receipt, and disregard the date of receipt indicated on the document

---

[2] Curiously, neither party provides the court with a copy of the notice.

[3] Curry has filed two affidavits in opposition to defendant's motion. The first was filed on July 10, 1997, without a supporting brief. (See Doc. No. 14.) Subsequently, Curry dismissed her original counsel and retained new counsel. Pursuant to the court's order extending the time in which to respond to defendant's motion, Curry filed a second affidavit on January 16, 1998, as an attachment to her memorandum of law in opposition to summary judgment. (See Doc. No. 27.) Hereafter, the affidavits will be referred to as "First Curry Affidavit," and "Second Curry Affidavit," respectively.

[4] Curry's first affidavit reflects that the date of receipt was "January 27, 1995." (First Curry Affidavit at 1 (Doc. No. 14).) In her second affidavit, however, Curry explains that date was in error; she avers it should have read "January 20, 1995." (Second Curry Affidavit at 1.)

8

itself.[5] Alternatively, the factfinder may find the signed document more likely reflects the true date of receipt.

Plainly, that dispute cannot be resolved by this court as it involves credibility determinations inappropriate for summary judgment. Curry therefore has demonstrated the existence of a genuine issue of material fact, and defendant's motion is due to be denied.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is due to be denied. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this 26th day of June, 1998.

_____
United States District Judge

---

[5] The court recognizes that the calendar excerpt contradicts Curry's contention that she received the notice on January 20, because 15 working days from that date is February 10, not February 7 as indicated on the calendar. Nevertheless, that factual dispute also is appropriately resolved by the factfinder.

9